IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| COMERICA BANK, a Texas banking association, <br><br> Plaintiff, <br><br> v. <br><br> 5515 SPALDING, LLC, ANIL DAMANI, 2457 MARTIN LUTHER, LLC, and ISHA M. ADIATA <br><br> Defendants. | CIVIL ACTION FILE NO. 1:24-CV-02114-TWT |

**EMERGENCY MOTION FOR APPOINTMENT OF RECEIVER AND BRIEF IN SUPPORT THEREOF**

Plaintiff COMERICA BANK, a Texas banking association ("Plaintiff"), files this Emergency Motion for Appointment of Receiver and Brief in Support Thereof, respectfully showing the Court as follows:

## I.      Introduction and Statement of Material Facts

**A.      The Parties and the Loan Documents**

This is an action against Defendants 5515 Spalding, LLC ("Spalding"), Anil Damani ("Damani"), 2457 Martin Luther, LLC ("Martin Luther"), and Isha Adiata ("Adiata") (collectively, "Defendants") stemming from defaulted loans on two commercial properties. As set forth in the Verified Complaint, Plaintiff is the owner

23853627.4

and holder of installment notes secured by, *inter alia*, security deeds[1] encumbering two commercial properties, which are located in Atlanta (2457 Martin Luther King

---

[1] The loan documents for the Atlanta property consist of: i) the Credit Agreement dated August 18, 2022, executed by 2457 Martin Luther (the "Martin Luther Credit Agreement") (attached to the Verified Complaint as **Exhibit A**), (ii) the Installment Note dated August 18, 2022, executed by 2457 Martin Luther and made in the original principal amount of $3,000,000.00 (the "Martin Luther Note") (**Exhibit B**), and (iii) the Deed to Secure Debt, Assignment of Rents and Leases, Security Agreement and Fixture Filing made as of August 18, 2022, recorded September 19, 2022, in the real property records of Fulton County, Georgia, at Deed Book 66152, Page 92 (the "Martin Luther Security Deed") encumbering real property commonly referred to as 2457 Martin Luther King Jr. Drive, Atlanta, Fulton County, Georgia 30311 (the "Martin Luther Property") (**Exhibit C**), (iv) the Guaranty dated August 18, 2022, executed by Damani (the "Damani Martin Luther Guaranty") (**Exhibit D**), (v) the Guaranty dated August 18, 2022, executed by Adatia (the "Adatia Martin Luther Guaranty") (**Exhibit E**), and (vi) any and all other documents, instruments, and agreements executed in connection with the financing arrangements by and between Plaintiff, 2457 Martin Luther, Damani, and Adatia (collectively, the "Martin Luther Loan Documents"). The loan documents for the Norcross property consist of: (i) the Credit Agreement dated October 3, 2022, executed by Spalding (the "Spalding Credit Agreement") (**Exhibit F**), (ii) the Installment Note dated October 3, 2022, executed by Spalding and made in the original principal amount of $5,800,000.00 (the "Spalding Note") (**Exhibit G**), (iii) the Deed to Secure Debt, Assignment of Rents and Leases, Security Agreement and Fixture Filing made as of October 3, 2022, recorded October 17, 2022, in the real property records of Gwinnett County, Georgia, at Deed Book 60257, Page 738 (the "Spalding Security Deed") encumbering real property commonly referred to as 5515 Spalding Drive, Peachtree Corners, Georgia 30092 ("Spalding Property") (**Exhibit H**), (iv) the Guaranty dated October 3, 2022, executed by Damani ("Damani Spalding Guaranty") (**Exhibit I**), (v) the Guaranty dated October 3, 2022, executed by Adatia ("Adatia Spalding Guaranty") (**Exhibit J**), and (vi) any and all other documents, instruments, and agreements executed in connection with the financing arrangements by and between Plaintiff, 5515 Spalding, Damani, and Adatia (collectively, the "Spalding Loan Documents" and together with the Martin Luther Loan Documents, the "Loan Documents").

Jr. Drive) and Norcross (5515 Spalding Drive, Gwinnett County) Georgia (collectively, the "Properties"). See Verified Complaint at ¶ 7. The loans secured by the Properties are guaranteed by Defendants Damani and Adiata.

**B.     The Events of Default**

As of the filing date of this action, the Defendants are in default under the terms of the Loan Documents in several critical respects. The Spalding Note and Martin Luther Note are in default, with the collective indebtedness presently totaling just under $9 Million. See Verified Complaint at ¶¶ 11-12.

There is also a serious problem with mismanagement and waste. On top of the defaults on the Spalding Note and Martin Luther Note, Defendants have failed to consistently maintain or provide sufficient evidence of insurance on the Spalding Property as required by Section 4(c) of the Spalding Credit Agreement and Section 4 of the Spalding Security Deed. Id. at ¶ 13.

Defendants have similarly failed to pay all taxes and assessments as and when due on the Spalding Property as required by Section 4(d) of the Spalding Credit Agreement and Section 3 of the Spalding Security Deed. Id. at 15. The current tax delinquency on the Spalding Property is over $75,650.95. Id.

On November 20, 2023, Plaintiff provided Defendants with notice of their existing and continuing defaults under the Loan Documents (see November 20, 2023 correspondence attached to the Verified Complaint as **Exhibit K**). On February 13,

2024, Plaintiff provided additional notice of these defaults (see February 13, 2024 correspondence attached to the Verified Complaint as composite **Exhibit L**). To date, Defendants have failed to satisfactorily cure their defaults. Upon information and belief, Defendants have (until recently)[2] been collecting rent from tenants at the Properties and absconding with the funds instead of satisfying their obligations to Plaintiff, paying vendors, and paying insurance as and when due.

There are additional concerns. Upon information and belief, there are unpaid vendors at one or both Properties (for example, the property manager at the Martin Luther Property resigned due to non-payment). See Verified Complaint at ¶ 20. Without these vendors in place to provide critical service and maintenance, the condition and value of the Properties will rapidly deteriorate. This often has far-reaching ramifications.[3]

---

[2]   On or about February 28, 2024, Plaintiff exercised its rights under the Martin Luther Security Deed and the Spalding Security Deed to instruct the tenants at both properties pay monthly rent directly to Plaintiff. But even if all rent is paid directly to Plaintiff on an ongoing basis without interference by Defendants (which remains to be seen), this will not cure the urgent problems necessitating this motion. There remains a large delinquency on the Martin Luther Note and Spalding Note, a large (and growing) tax delinquency, unpaid insurance, and a high risk of additional waste that will rapidly devalue the Properties absent immediate intervention.

[3]   On information and belief, the Martin Luther Property (commonly known as the Holmes Plaza) has an armed security presence, and there have been tragic public safety concerns in the past. See https://www.11alive.com/article/news/crime/atlanta-crime-person-shot-and-killed-mlk-drive/85-e13e0550-cfd5-4c5f-80dd-0e8047db2034 If in fact vendors are not getting paid – or even if there is a risk of non-payment – it could endanger the safety of the tenants and at patrons at the Martin Luther Property.

4

The Loan Documents require Defendants to provide Plaintiff with documents and information concerning the Properties and Defendants' financial condition. Section 4 of the Spalding and Martin Luther Credit Agreements state:

> **SECTION 4    AFFIRMATIVE COVENANTS.** So long as Bank shall have any commitment or obligation, if any, to make or extend any Loans to or in favor of Borrower, and/or so long as any Indebtedness remains unpaid and outstanding, Borrower covenants and agrees that it shall:
>
> (a) ***Financial Statements; Reporting Requirements.*** Provide to Bank, or cause to be provided to Bank, the following, each of which shall be prepared in accordance with GAAP, and shall be in form and detail acceptable to Bank:
>
> (i) As soon as available, and in any event within ninety (90) days after and as of the end of each fiscal year of Borrower, shall provide to Bank, annual internally prepared financial statements of Borrower for and as of the end of each such fiscal year, containing the balance sheet of Borrower as of the close of each such fiscal year, statements of income and retained earnings and a statement of cash flows of Borrower for each such fiscal year, and such other comments and financial details as are usually included in similar reports or as may be requested by Bank, certified by an Authorized Officer of Borrower.
>
> (ii) Within thirty (30) days of filing thereof each year, copies of the federal income tax returns of Borrower with all schedules, exhibits and other attachments thereto. In the event any extension of time for the filing of any such tax returns is requested, Borrower shall deliver a copy of any such extension to bank within fifteen (15) days of filing thereof.
>
> (iii) Within thirty (30) days after the end of each calendar year, deliver to Bank, in form and detail satisfactory to Bank, a certified rent roll for the Leased Property.
>
> (iv) Within thirty (30) days after the end of each calendar year, deliver to Bank a copy of all new or modified leases or other occupancy agreements for the Leased Property.
>
> (v) Simultaneous with the delivery to Bank of the respective financial statements required above, a Compliance Certificate.
>
> (vi) As soon as available, and in any event within thirty (30) days after and as of the end of each calendar year, copies of the annual personal financial statements of Anil Damani for and as of the end of certified by Anil Damani as to accuracy and fairness.
>
> (vii) Within thirty (30) days of the filing thereof each year, copies of the federal income tax returns of Anil Damani, together with all schedules, exhibits and other attachments thereto. In the event that any extension of the time for the filing of any such tax returns is requested, Anil Damani shall deliver a copy of any such extension to Bank within fifteen (15) days of the filing thereof.
>
> (viii) Within thirty (30) days after and as of the end of each calendar year (and at such other times as Bank may request), such statements, schedules, certificates and reports respecting all or any of the Liquid Assets of Anil Damani as Bank may request, certified by Anil Damani. Any statement, schedule, certificate or report identifying any Liquid Asset shall be accompanied (if Bank so requests) by evidence of Anil Damani's ownership of the Liquid Asset, evidence that the Liquid Asset is Unencumbered and evidence of the Liquid Asset's current value.
>
> (ix) Concurrently with the delivery of the annual personal financial statement of Anil Damani, deliver to Bank, in form and detail satisfactory to Bank, a "Real Estate Owned Schedule" listing all properties owned by Anil Damani either directly or as an investor in partnerships, limited liability companies, privately-held corporations, or in a trust, including year-to-date revenue, operating expense, net operating income, total debt, debt service, Anil Damani's share of debt for each property, capital expenditures, rentable area and rate of occupancy in form and content acceptable to Bank.
>
> (x) Promptly after becoming aware of the occurrence or existence of any Default or Event of Default, or of any other condition, occurrence or event which has had or could reasonably be expected to have a Material Adverse Effect, a written statement of an Authorized Officer of Borrower setting forth the details of such Default or Event of Default, or such other condition or occurrence, and the action which Borrower has taken or caused to be taken, or proposes to take or cause to be taken, with respect thereto.
>
> (xi) Such other information concerning Borrower, any Loan Party and/or any Guarantor as Bank shall reasonably request from time to time.

See Spalding Credit Agreement and Martin Luther Credit Agreement at § 4. Despite these requirements, however, Defendants have not provided any of this information since June 2022. See Verified Complaint at ¶ 18.

23853627.4

In short, there are serious problems with both Properties that will only worsen with time. To ensure that Plaintiff's security interests are protected – and to prevent further mismanagement and waste at the Properties – Plaintiff seeks the appointment of a receiver to manage and safeguard the Properties pending the final resolution of this matter. Plaintiff has identified an entity – B. Riley Financial Advisors ("<u>B. Riley</u>") – that has a wealth of experience and expertise in managing commercial properties such as the ones at issue here. A summary of B. Riley's qualifications is attached hereto as composite **Exhibit A**. A proposed Order defining the scope of B. Riley's appointment is attached to the Verified Complaint as **Exhibit M**.

Given the urgency of this matter, the parties respectfully request the opportunity for a hearing on this matter at the Court's earliest convenience pursuant to LR 7.2(B) N.D.Ga.

## II. <u>Argument and Citation to Legal Authority</u>

**A.** <u>**Legal Standards**</u>

In an action sitting in diversity, federal law governs the appointment of a receiver. <u>See</u>, <u>e.g.</u>, <u>Nat'l P'Ship Inv. Corp. v. Nat'l Hous. Dev. Corp.</u>, 153 F.3d 1289, 1291 (11th Cir. 1998); <u>Sterling v. Stewart</u>, 158 F.3d 1199, 1202 (11th Cir. 1998); <u>Resolution Trust Corp. v. Fountain Circle Associates Limited Partnership</u>, 799 F. Supp. 48 (N.D. Ohio 1992).

Pursuant to Rule 66, district courts maintain "broad discretion to decide whether it is appropriate to appoint a receiver" over assets in dispute in litigation. PNC Bank, N.A. v. Prime Props. of Clearwater, Inc., No. 8:16-cv-747-T-23TGW, 2016 WL 11493324, at *1 (M.D. Fla. June 21, 2016) (quoting Moore's Federal Practice, § 66.04[1][b] (3d ed. 2015)). While no precise formula exists for determining when the appointment of a receiver is proper, "federal courts may consider a variety of factors in determining whether a receiver is warranted, including: (1) the presence of a contractual receivership provision; (2) fraudulent conduct on the part of the defendant; (3) imminent danger that property will be lost or squandered; (4) the inadequacy of available legal remedies; (5) the probability that harm to the plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; (6) plaintiff's likelihood of success on the merits; and (7) whether the receivership will in fact serve the plaintiff's interests." Regions Bank v. Legal Outsource PA, No. 2:14–cv–476–FtM–29DNF, 2014 WL 7014559, at *5 (M.D. Fla. Dec. 11, 2014) (citing Nat'l P'ship Inv. Corp., 153 F.3d at 1291).

Resolution Trust is instructive. In that case, the plaintiff/lender held a mortgage on real property to secure payments on a note. 799 F. Supp. at 48. The defendant went into default. Upon motion by the lender, the district court determined that the appointment of a receiver was appropriate. First, the security

was inadequate because the outstanding indebtedness exceeded the appraised value of the property.  Id. at 52.  Second, there was serious doubt as to the solvency of the debtor.  Third, there was evidence that the property was not being maintained and was therefore at risk of diminishing in value.  Id.

Fourth, the district court balanced the harms and found that the lender stood to suffer greatly if a receiver was not appointed:

> The harm done to RTC [the lender] by denying the appointment of a receiver outweighs any harm that would be done to FCLP by appointment. The harm to RTC, if appointment is denied, is the continuing devaluation of the property as well as the inequitable situation of being forced to sell the property at a loss, when possible improvements to the property might enable RTC to sell it at an appropriate price. FCLP [the borrower] is presumably collecting rents and profiting from the property, while refusing to properly maintain the property. The injury to FCLP, if a receiver is appointed, would consist of the loss of use of the foreclosure proceeding to further delay the transfer of the property and the profits from this delay. Any harm to FCLP in appointing a receiver is minimal.

Id.

Fifth, the court found that the lender's probability of success was high, as the evidence showed that the debtor was in default.  Id.  Sixth, the court found that the lender faced the risk of irreparable harm because the value of the collateral was declining.  Finally, the lender's interests would be served by the receiver, because it would allow the lender to receive rents during the pendency of the litigation to reduce its loss and protect the collateral from further devaluation.

B.   **The Appointment of a Receiver is Warranted in the Present Case**

(1)   The Loan Documents Authorize Appointment of a Receiver

The Spalding Deed and the Martin Luther Deed both authorize the appointment of a receiver to manage the properties and collect rents in the event of default.  Specifically, both deeds state that in the event of a default, Plaintiff is entitled to "[o]btain a receiver to manage the Premises and collect the rent, profits, and income from it without notice to grantor, unless required by applicable law." See Spalding Deed and Martin Luther Deed at ¶ 13.

This factor alone weighs heavily in favor of Plaintiffs' request.  See, e.g., Comerica Bank v. Everglades Dressage, LLC, 2021 WL 911065 at *2 (S.D. Fl. 2021) ("Defendants' affirmative consent in the Loan Documents to the appointment of a receiver weighs heavily towards finding such action justified").  See also 3376 Lake Shore, LLC v. Lamb's Yacht Center, Inc., 2012 WL 1261231 at * (M.D. Fla. 2014)("the Court acknowledges that the receivership provision in the Mortgage weighs heavily in favor of granting the requested relief"); Branch Banking and Trust Co. v. Oldsmar Galleria, LLC, 2012 WL 3262879 at *3 (M.D. Fla. 2012)("The Court concludes that, at a minimum, the Receiver clauses are entitled to great weight").

In fact, Plaintiff's motion is made even stronger by Defendants' express waiver of their right to object.  Under the Spalding Security Deed and Martin Luther Security Deed, the borrower "hereby specifically waives the right to object to the

9

appointment of a receiver as described herein and hereby expressly consents that such appointment shall be made as [Plaintiff's] absolute right and that such appointment may be made without notice to [borrower]." See Spalding Security Deed and Martin Luther Security Deed at ¶ 21.

Under Georgia law, "courts are required to construe agreements in a manner that respects the parties' sacrosanct freedom of contract. Indeed, it is well settled that contracts will not be avoided by the courts as against public policy except where the case is free from doubt and where an injury to the public interest clearly appears." Community & Southern Bank v. DCB Investments, LLC, 328 Ga. App. 605 610 (2014) (quotations and citations omitted). No such special circumstances are present here that would justify disregarding this waiver.

(2)   There are Indicators of Fraud

Second, while Plaintiff does not yet have the benefit of the full picture, there are indicators of fraud. According to rent rolls for the Martin Luther property, there are several rent-paying tenants – but for a period of several months Defendants absconded with the funds instead of paying taxes, insurance, or making payment toward the Spalding Note or Martin Luther Note.

In a similar vein, although the Loan Documents require Defendants to provide several categories of documents to Plaintiff (see Martin Luther Credit Agreement and Spalding Credit Agreement at § 4), Defendants have failed to do so. See

10

23853627.4

Verified Complaint at ¶ 18. There is no benign explanation for Defendants' withholding of this information.

Furthermore, even if the foregoing is not conclusive proof of fraud, "fraud is not required to support a district court's discretionary decision to appoint a receiver." Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc., 999 F.2d 314, 317 (8th Cir. 1993). Rather, a receiver may be warranted "to protect a judgment creditor's interest in a debtor's property when the debtor has shown an intention to frustrate attempts to collect the judgment." Id. (quotation omitted). See also D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broadcasting, Inc., 550 F. Supp.2d 481, 491 (S.D.N.Y. 2008) ("Although plaintiff does not allege that Tama has engaged in any fraudulent conduct, this Court has appointed receivers even where there was no evidence of fraud."). See also Resolution Trust, 799 F.Supp. at 48 (appointing receiver without a finding of fraud). Defendants' failure to provide financial disclosures appears to be "an intention to frustrate attempts to collect" what Plaintiff is owed.

    (3)    <u>There is Imminent Danger that the Properties Will be Lost or Squandered</u>

There is strong evidence of waste and of danger to the Spalding and Martin Luther Properties. Defendants have failed to provide proof of consistent and un-lapsed insurance on the Spalding Property. The real estate taxes on the 5515 Spalding property are past-due in an amount exceeding $75,000.00.

11

The situation is equally dire with respect to the Martin Luther property. Defendants have failed to provide proof of consistent and un-lapsed insurance and, upon information and belief, vendors are not being paid. See Verified Complaint at ¶ 20.

It also bears reminding that Defendants have had several months since Plaintiff's default notice but given no concrete assurances that they will cure their defaults. It is only a matter of time before one or both of the Properties are lost to a tax sale or waste. Indeed, there has already been waste. Plaintiff was required to put forced-placed insurance in place, at significant cost, on both properties. And as of the date of this motion, it is unclear as to whether Defendants are continuing to pay insurance premiums as and when due. It is equally unclear whether Defendants will continue to pay taxes as and when due.

These facts weigh in favor of the appointment of a receiver. See PNC Bank, N.A. v. Marketing Goldmines Consulting, LLC, 2021 WL 21762 at *3 (E.D. Mich. 2021) ("Defendants' failure to pay the real estate taxes for three years makes the Property subject to being lost through a tax foreclosure. Thus, the Property at issue is in imminent danger of being lost, concealed, injured, diminished in value or squandered, weighing in favor a appointment of a receiver."). See also Everglades Dressage, 2021 WL 911065 (appointing receiver where loan was in default and the borrower failed to pay taxes and insurance); PNC Bank v. Shan Motel Co., 2014 WL

12611034, at *3 (M.D. Fla. June 30, 2014) (appointing receiver where there debtor conceded default and "there is an imminent danger that the Motel Property will be diminished in value if a receiver is not appointed.").

    (4)    <u>There is Not an Adequate Remedy at Law</u>

Based on currently available information, Defendants have absconded with rent proceeds while failing to pay taxes, insurance, or towards their debt under the Notes. Moreover, given the current trajectory (non-payment of taxes, insurance, and expenses at the properties), there is a high (and escalating) risk that the value of the Properties will be diminished absent immediate action—if the Properties are not lost to tax foreclosure altogether. Absent the appointment of a receiver, there is no way to adequately protect against this risk. <u>See</u>, <u>e.g.</u>, <u>BOKF, N.A. v. Gordon Jensen Health Care Association, Inc.</u>, 2021 WL 969578 at *5 (S.D. Ala. 2021) (granting motion to appoint receiver where "[t]he parties have not presented a legal remedy that would provide for immediate control of the Facility for the purpose of securing the collateral for the Bondholders."). <u>See also Canada Life Assur. Co. v. LaPeter</u>, 563 F.3d 837, 845 (9th Cir. 2009) (affirming appointment of receiver when the subject property and the rents therefrom were in danger of being diverted, the taxes were not being paid, and the value of the property "is or may become insufficient to discharge the debt which it secures."); <u>see also</u> <u>Cadence Bank, N.A. v. E. 15th St., Inc.</u>, No. 8:12-CV-1833-T-17EAJ, 2013 WL 2151743, at *4 (M.D. Fla. May 16,

2013) ("It is undisputed that Plaintiff has not received rental income from the Property. As such, rent payments constitute a form of property that is in imminent danger of being lost without a receiver to collect the income for Plaintiff").

    (5)    The Balance of Harms Tilts Heavily in Plaintiff's Favor

This factor also favors Plaintiff.  If a receiver is appointed, Defendants may lose some control over the Properties, but the Properties will be under the supervision of the Court with the aim of ensuring that the value in the Properties is being preserved.  On the other hand, the risk to Plaintiff if a receiver is not appointed is substantial for the reasons stated above.  The balancing of risks favors the appointment of a receiver.  See Tama Broadcasting, 550 F. Supp. at 492-93 (balancing of harms favors secured creditor in light of numerous events of default and where defaulting borrower "has failed to demonstrate how such appointment would injure it, other than displacing some of its own authority."); see also N Y. Life Ins. Co. v. Watt W. Inv. Corp., 755 F. Supp. 287, 293 (E.D. Cal. 1991) (stating, in the context of a contract specifically providing for the appointment of a receiver, that "[t]here is little hardship in enforcing the terms of the parties' bargain[.]").  See also Resolution Trust, 799 F. Supp. at 48.

(6)     <u>Plaintiff is Likely to Succeed on the Merits</u>

This factor also tilts heavily in favor of the receivership.  Defendants are in default under the Loan Documents in several respects–a fact they have not denied since receiving Plaintiff's default notice.  There is no serious rebuttal on this factor.

(7)     <u>The Receivership Will Serve the Interests of all of the Parties</u>

Finally, although Defendants may try to contest this point, the appointment of a receiver will ultimately serve the interests of **all** parties.  It is in both Plaintiff's and Defendants' best interest to ensure that the Properties are protected and that their values not diminished (especially since Defendants Damani and Adiata are individual guarantors on the defaulted loans).  The same is true with the tenants at the Properties, who only stand to lose if the Properties are neglected and fall into disrepair.  As the foregoing shows, the status quo is untenable.  And, if the situation deteriorates further, everyone will lose.   The best way – if not the only way – to mitigate the mounting losses is to appoint a receiver as soon as possible to manage and stabilize the Properties.

Respectfully submitted this 15th day of May, 2024.

                                               <u>s/ Walter E. Jones</u>
                                               MATTHEW B. AMES
                                               Georgia Bar No. 015898
                                               WALTER E. JONES
                                               Georgia Bar No. 163287

                                               *Attorneys for Plaintiff Comerica Bank*

23853627.4

**BALCH & BINGHAM LLP**
30 Ivan Allen Jr. Blvd. N.W., Suite 700
Atlanta, GA  30308
Telephone:  (404) 261-6020
Facsimile:  (404) 261-3656
mames@balch.com
 wjones@balch.com

16

23853627.4